This is an unusual case for the Court. The Court's reported decisions do not have a situation where 10-13 officers from 4-5 agencies, with an airplane, watch a home for 15 hours and then run in claiming an exigency. This Court's decision in Stafford made very clear the requirements of the exigent circumstances exception. There has to be probable cause, there has to be real exigent circumstances, and one extra requirement. There must be no time to obtain a warrant. Okay, Ms. Tanner, could you tell me when probable cause arose in this case? I'm not contesting probable cause. That's not my question. My question is when did it arise? At the home, I would say after two or three hours, if the package wasn't moving. And they were sure. Well, how would the agents be able to convince the magistrate, in the absence of the package being opened, that anybody inside the home had any idea what was in it? It's still probable cause to search. And they could have gone, they watched Mr. Saechao. What, that the home had, but nobody inside it knew? They knew that Mr. Saechao owned the post office box. Right, but the package was addressed in somebody else's name, was it not? And they ascertained early that it was a false name. But that doesn't necessarily connect Mr. Saechao to that name, does it? I think that the agents were hoping that they would get the big fish, the big trafficker. And they were waiting for someone to come and get the package. They were waiting for the package to be opened, because only when the package is opened can probable cause arise, so that we can say with some degree of certainty that the person who opened the package has some idea that it contains something illegal. Otherwise, all we know is that Mr. Saechao picked up a package at the post office addressed in somebody else's name. And I don't think that's sufficient to establish probable cause to believe that Mr. Saechao knows what's inside the package. Well, that's probable cause to arrest. But the agents certainly had probable cause for a search warrant earlier. Now, they may have. I agree with you that there's a difference between the probable cause for arrest and the probable cause for search. And perhaps there was enough probable cause for search. But, of course, they knew what was in the package, so they didn't really want to search the package anyway. But after they opened the package, why was there exigency then? Are you conceding there was exigency then? I think that's another time frame. As soon as the buzzer went off at 12.05 a.m., they certainly could have cordoned off. And Mr. Saechao came up with his hands up in the air and was arrested. They could have cordoned off the trailer and gotten a search warrant then. That was certainly probable cause both to arrest Mr. Saechao and to search the trailer. And I think that's what – It appears to be what they originally intended to do. They just made a mistake essentially. The evidence here is that they went in partly in the belief that it was covered by the warrant. Well, the agent admitted he didn't read the warrant in the four days that he got the order. And the magistrate judge who suppressed is the judge who issued the order. He clearly reasonably expected them to come back to get a search warrant. And at the time the package was opened, with 13 people or 10 people, they could have cordoned off that house that they had watched so long, not believing any other adult had come or gone. How much that protects against the destruction of other evidence, incriminating evidence that might be inside the trailer, unless the officers go in and conduct some kind of a protective sweep to make sure that there isn't somebody else inside besides Mr. Saechao and his girlfriend. They could have – there was a possibility of other evidence like documentary evidence. Well, it could have been drugs too, couldn't it? There could have. But they had no reason to believe that. They had a great big package with 12 huge album-sized books. They had sham drugs. They had photographed and measured and seized the opium that was in it. So this wasn't something that was going to flush or get burned in the stove. My question goes beyond what's inside the package. If they have probable cause to search the house for evidence of drug-dealing activities, there could very well be other incriminating evidence in the house, including other drugs, that could be flushed in the absence of a protective sweep to make sure that there isn't somebody in there who can do it while they take the two to three hours to get the warrant. Or men with guns. Or men with guns. Or men with guns. Well, they watched it for a long time, and those people – But they didn't know the men, the possible people inside that might have the guns, didn't know they were being watched by police. You could have cordoned off a house, and you don't know who's inside. If this is a drug operation, it is not out of the question that you flush other people out, but there are other people in there who might try to escape or might try to shoot their way out or something of that sort. That's possible, but as this court said in Suarez, the government has the burden, and the government has to show articulable circumstances that show they had a reasonable fear. First of all, they watched it for so long, they didn't have a reasonable fear. But I thought the testimony was that they couldn't actually see the back entrance to the trailer home because of the layout of the – Right. They couldn't see the door, but they could see who came and went. They knew the package was still in the house. What about the independent source? Well, first of all, the government didn't raise it. And if the court remands, I think that's an option for the court. But in this case, the government was given an opportunity by the magistrate to supplement with whether or not the warrant was tainted, and eschewed that invitation by the magistrate. What do you mean by that? He asked them whether it was tainted. I think both the magistrate and Judge Singleton said that – perhaps not Judge Singleton, just the magistrate. The government, in his decision, the government could – any kind of discussion of taint, and that didn't happen. But they didn't get to that point because they took the magistrate up to the district court on the main ruling, and the district court reversed. Presumably, the district court had affirmed the magistrate judge that the government would have had a chance to come back and take up the magistrate's invitation to address the taint issue. But since the district court reversed the magistrate, that no longer came into play. But the government's raising it now, and the question is, was the warrant tainted? I mean, if you look at what Agent Martinez said, he depended on the observations in the House. Well, he didn't depend on them very – I mean, he mentioned them. But as far as I can tell, looking at it very closely, he depended on them really with respect to the computer, the presence of the computer. Other than that, there didn't seem to be anything that he didn't know independent of. The package? The presence of the package. The presence of the package. He was completely independent of it. It's the government's burden to show that the – What about the computer issue? Is the computer – is there –  Is there a computer or suppression of the computer? There's no computer here. There is a computer. Right. This is a package. So the computer doesn't matter. So it's only the package we're talking about. Yeah. Is that right? Right. The package with drugs. I'm sorry? The package that originally had drugs. And that's all you're trying to suppress? Right. Really? Right. There's nothing else? They didn't find anything else in the House? No. No. And I went through a whole trial. Okay. And that was – that's the evidence. Okay. Oh, okay. It's a great big package full of sham drugs. I think it's possible for the court to remand on the independent source, but I think if that's true, then it's almost the end of the warrant requirement because it's the precursor, the fact that the judicial officer says ahead of time that you can go in the House. The judicial officer who issued the order in this case said – But we do have case law supporting this, do we not? I mean, I looked because I was a little surprised as well, but there seems to be a Frank's-like doctrine that says that if you have a warrant that has tainted information, you can disregard the tainted information and see whether there's probable cause without it. Is that not right? Well, I think that's true, but I think there's a waiver here, among other things, because the government had plenty of opportunity. Well, assuming there's no waiver, though, there's really no way around Judge Berzon's – the implication of Judge Berzon's questions. Is that if you go through and you excise all the things in the affidavit that mention the things seen in the House, you still have the evidence that your client picked up the package and the package was known to have opium in it, that it was a substitute package, and that it was taken to the House and that some hours later it went veep, and veep meant that somebody had opened the package. All of those things would have been in the affidavit, and I can't believe that the magistrate judge wouldn't have granted the search warrants. They would have said, oh, leave the bricks with the beeper in the House. This is just not enough. I mean, I just can't conceive of judicial officers saying that. But according to this case, this Court's case in Stafford and Hackett, which I think Judge Singleton misread, the police should not be running into a house without a warrant. Well, we're assuming that now. I mean, my set of questions is assuming that. But the question is, what then? Let's assume that at least there was no exigency at the end because they had enough people there and no reason to believe there was somebody else in the House and no reason to believe that there was anybody with a gun in the House. Let's assume all that. And they shouldn't have done it. And they did do it. And then they went and they got a warrant that precisely because they had so much information beforehand, there was enough information in the warrant that had nothing to do with what they saw in the House to get the warrant. I think it's the government's burden to show that they would have done it the right way. And with Agent Martinez not reading the court orders and running in after 12 or 13 hours, I don't know that the government can show that on remand. See, the one thing we know here, absolutely know, which was not clear in the other cases, is that they would have sought a warrant because they said they were going to seek a warrant. He screwed up at the end. But his original intention was to seek a warrant at that point. But he didn't follow his intention. I mean, he didn't read Paragraph 10. He admitted that he... I understand that. What I'm saying is in Murray and the other cases, there was an open issue which was remanded as to whether they would have bothered to seek a warrant had they not seen what they saw in the House. But here we know they... I don't know that that's true because they were so careless to the extent of being reckless about the court's order. They organized all the surveillance, but they didn't read... So you think he just typed that in the application but really didn't mean it? Well, if he forgot that, I think it's uncertain what the government could prove if they had had a hearing about independent source, what Agent Martinez would have done. And the DEA people ask him, where's the warrant? They questioned him about that. Well, I thought he testified about that at the suppression hearing. And didn't the magistrate judge credit his testimony that he just screwed up? He meant to do it, but then for whatever reason, he didn't. He did not read it. He didn't think about it. He thought he could go into the House, although the government also argued that they couldn't get an anticipatory warrant because they didn't think they had enough clause. Well, there's a problem with the anticipatory warrant, is there not, based on our case law, Vista-Kuru and the case on which it relies, that the package has to be on a sure and certain course and the difference in Vista-Kuru was that the package was actually addressed to and delivered by a delivery service to Vista-Kuru's home, whereas here it went to a post office box in an alias name. But it was on a sure course for the home where it sat for 12 or 13 hours. But it happened. I mean, the problem is that there's no way for the agents to know that that's the final house that it's going to. Maybe Mr. Seyshire is holding it for this mysterious alias-named person who's going to come and pick it up for him and take it to another house. But that's what it anticipates. It anticipates the anticipatory. No, no, no. Our anticipatory case law says you have to be able to show the magistrate that the package is on a sure and certain course to the place that you want to search. And that goes back to the first question I asked you at the start of your argument. When did probable cause arrive? And if it didn't arise until the time that the package is opened, then I don't think it meets our requirement under vis a curu that the government could have obtained an anticipatory search warrant until the package was open. But the triggering event of the anticipatory search would be the opening of the package. At that time, it's on a sure course because it's been sitting there, and it beeps. So that's when probable cause arrives, when the package is opened.  Don't you have a harmless error problem anyway? I mean, let's say you go back and say, okay, this was surely suppressed. So we go back and we suppress what they got in the house. It seems to me somewhat trivial. What they got in the house was a package whose contents they already knew, and the contents was open, which they also knew because the beeper went off. So what did they really get by going in that wasn't any consequence of the trial? Well, I think that's up to the trier effect. No, no, no. If you conduct harmless error, you have to, we say, become a super-trier effect. So what they go in is they ask somebody to testify. You know, sure as day, we went in and we found the package, our package with the bricks and the books, and it was open, just like we thought it would be because we had the beeper go off. So I guess I'm not convinced that even suppressing this would help you in any way. Well, the defendant was acquitted of possession with intent to distribute, and he was convicted of possession of a controlled substance and convicted of importation of a controlled substance. On the basis of the testimony of trial, which isn't part of the record, I admit, but was the observations of the agent when they went in, what the package looked like, and Mr. Sehchao outside with his hands up, and the pictures of him coming and going from the house and the post office. I tend to wonder as well why this all matters, but there's been no harmless error argument made, and we don't have the transcripts, so there's no way we can make a harmless error determination at this point. And because we don't know, we can't really see it in the context, and the government hasn't raised a harmless error argument. There's no harmless error contention before us at this point. Is that correct? And our case law says essentially harmless error is waverable, although it isn't always, but in this instance, one would think it would be because we don't have a transcript, how much to judge harmless error. Right. Well, this was a judge trial. That's certainly one point of view. Pardon? That's certainly one point of view. In any event, I think you've had your time. Could I save one minute? Well, if there's anything to save us for. May it please the court, I'm Kirby Heller. I represent the government. How are you, Ms. Heller? Good, thank you, Your Honor. Anything you've heard today that you think isn't adequately answered in your brief? The only... I guess finance. Just two minor points. I want to address the waiver point. I guess the important thing to remember next time you prepare a brief is to try to participate. Okay. I would like to... Go right ahead. Thank you. I'd like to address the waiver point on the independent source doctrine. I don't believe under the circumstances of this case that the government has waived that argument. Of course, Your Honor, as... I do agree, I gather from your brief, that we wouldn't address it. The best we would do is remove it. Is that right? Well, in reconsideration, I believe actually this court can affirm on this record, and I'd like to direct, in thinking about it more after seeing the defendant's waiver argument, direct this court to a concurrence by Judge Wardlaw in United States v. Smith, which is 389 F. 3rd 944. It's a 2004 case. And in that case, the majority of the panel did not suppress evidence that was deemed incidental with search. And Judge Wardlaw disagreed with that. But she concurred in the judgment because she found that the evidence would have been recovered, would have been discovered under the inevitable discovery doctrine, even though the parties had not raised it below and the district court had not made any findings. Based on the long-established doctrine that, of course, this court can affirm on any record apparent from any basis apparent from the record. And in this case, of course, it's our position that the district court did make a finding as to probable cause. And even as to the factual issue about... But it didn't make a finding as to the presence of probable cause if you took out the tainted evidence. I believe what the district court said is that... And they're really in the negative that the agents did not have probable cause until the defender brought the package back to his house. And I think one can infer from that that the district court is saying at that point there was probable cause. The agents weren't required. If there was probable cause at that point, then you should have gotten a warrant at that point. Well, I think, as Judge Tallman has brought out, that the point of the investigation is really to find out who is opening this package. But that's for the arrest warrant. That's not for the search. But that's the point of the investigation. But they didn't, in fact, use it for an arrest. I mean, when they went into the house, they already had the arrest. Well, when the package went into the house,  But that's not all. That's not the only factor. How would you tie... I guess you are disagreeing with Ms. Tatter's answer to my question. You think that probable cause arose at the point that the package was carried into the house. Is that your position? Well, I believe that there is probable cause that there be evidence of a crime in the house. I don't believe that... Why? Because of... How would you tie Mr. Seychell's house to Mr. Seychell's knowledge or involvement in drug trafficking if all he has done is to pick up a package yet to be opened from the post office? And I agree with that entirely. There's certainly no probable cause to arrest Mr. Seychell. The agents would have no idea... Well, probable cause is probable cause. There's not a constitutional distinction between probable cause to arrest and probable cause to search. The only question is whether or not under the Fourth Amendment, there's probable cause to believe that evidence relating to the crime may be found in the house. But the probable cause analysis is still the same. And tell me why I think probable cause arose in this case. Well, I don't believe that probable cause to connect Mr. Seychell to the crime arose until the paper went off. That's when we know that he had no knowledge. Well, if there's no probable cause to tie him to a crime, then why would there be probable cause to tie the house to involvement in criminal conduct? Well, I... Somebody committed a crime. Excuse me? Somebody committed a crime. Somebody committed a crime. Maybe until the paper goes off, we don't know it's Mr. Seychell. But, I mean, I would believe that once this package, which has a trace amount of opium and, of course, is evidence of a crime, goes into the house, I mean, the agents could conceivably search it. There's probable cause to believe that package is in the house, but that's useless to them unless they can connect it to a person. And that's why they put the transmitter in. But the evidence has to show that somebody inside that house knows that the content of the package is drugs. And until the package is opened, how can you convince a magistrate that that house has anything to do with drug trafficking activity? I mean, it really is no different than an air freight or a postal service warehouse through which the package moved on its way to wherever its ultimate destination is. Well, and that's the reason why, of course, you wouldn't seek a search warrant. But in fact, if there were a murder and you knew that the murder weapon was in somebody's house, it doesn't matter whether somebody in that house had anything to do with the murder, right? You can still search the house for the weapon. I believe that's correct. And that's essentially what you're saying. Yes, I believe that's correct. So if all they wanted to do was to simply retrieve the package, which they clearly knew contained contraband, your argument is we saw it go into the house. We know there's contraband inside. We can at least get a warrant to go in and get our package back. Right. But again, of course, there's no purpose under the fact of this case to be doing that. We want to connect the ultimate person. So getting back to whether the court has to remand for the finding of whether the agents would have sought a warrant in the absence of what they saw, I think the record. I don't have any problem with whether they would have sought a warrant. They said they would have gotten a warrant. Okay. And I don't think they did. But the question is whether there was probable cause without the tainted information in the warrant. Where has that determination been made? Well, I do believe the district court, again, by saying it in the negative, made that finding. The district court said. Why can't we make it? And the second response is this court can make it. It's a purely legal finding. The facts are in the record. And this court can never conclude. We just take a black marker, go through the affidavits, strike out all that stuff, read it, look at each other and say, hmm, probable cause. I believe this court can do that because probable cause is a legal conclusion based on the facts that are in this record. Okay. Are there more things in your brief you thought were inadequate? No. I'll rely on our brief, Your Honor. Thank you. One minute. Thank you, Your Honor. I think if the court remands, that's fine. If the court doesn't remand and makes the finding, there's no incentive for precursor warrants for the judicial officer to have to decide this. The agents won't do it. There won't be pre-search judgments if they can run in on a perceived exigency and later show they would have gotten a warrant. I think this would be a very important. But it's a very unusual circumstance. Yes. They really had gotten nothing out of the warrant that they – out of the non-warrant that they wouldn't have gotten from what they already knew. It's very strange precisely because they knew what was in this package. They knew everything about the package. And I was surprised to learn there was something else that came in the trial. There was something else that came in the trial that wasn't the package. You might be on stronger grounds. But in this instance, they really didn't – all they were after was a package. They just had no incentive to be fooling around. They made a mistake. This is an unusual circumstance. And they – in my opinion, they made a major mistake. But the principle that this Court will set in excusing the – I mean, if you had told me that a computer came in, I would have said, ah-ha, no, you can't do that. Because they didn't know anything about a computer until they went into the back of the trailer. But that isn't what happened. That's true. This is a very – it was a bare-bones case at trial with the package. But the principle of letting the government later say, look at all the circumstances, they would have gotten a warrant because that's the kind of things they said, and they could have gotten a warrant without the taint, will obviate in future cases the prejudgment of a magistrate. That may be bad policy. But that's essentially what Murray held with the added piece, which I did find some nicer cases recognizing that even if you – in Murray, there was – they did not use any information, as I saw, in the warrant. But there is case law saying that even if you do that – I mean, am I right about that? Do you have any doubt about that, the fact that there is case law supporting that proposition, that you can take out the tainted information? This affidavit had both untainted and tainted information. And there is case law saying that you can disregard the tainted information. I think the issuing judge can, or the reviewing judge can excise that. Right. But this has – Do you think the difference is whether we do it or they do it? Well, I think the – I think we should have an opportunity to cross-examine Agent Martinez about what he would have done if he had done things right in the first place, because he was so confused about the original order and the original authorization. Do you think there should be a remand not on the probable cause question, but on what Martinez would have done? I think if the court remands, it should remand to the district court on the issue of whether the government can prove independent source. That's what they raised in their appellate brief. We can show independent source for the first time on appeal. It's their burden to prove it, and I think they should prove it to the magistrate with Agent Martinez testifying about what he would have done if he hadn't done the wrong thing. Thank you. Agents, I yield the floor.
judges: Kozinski, Berzon, Tallman